**SIGNED THIS: November 07, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAROLYN J. JEFFERSON, | ) | No. 08-80012 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CAROLYN J. JEFFERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 08-8095 |
| | ) | |
| MIDWEST UROLOGICAL GROUP, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court for entry of a default judgment and for determination of damages for wilful violation of the automatic stay.

### FINDINGS OF FACT

1. The Debtor, Carolyn J. Jefferson (DEBTOR), owed a prepetition debt to the Defendant, Midwest Urological Group, Ltd. (DEFENDANT), for medical services.

2. The DEBTOR filed her Chapter 7 petition on January 2, 2008, and scheduled the DEFENDANT as holding an unsecured claim in the amount of $129.00.

3. On January 5, 2008, the DEFENDANT was served by mail from the Bankruptcy Noticing Center with the Notice of the bankruptcy case filing.

4. The Chapter 7 Trustee determined that there were no assets available for creditors and the DEBTOR received her discharge on May 1, 2008.

5. A copy of the discharge order was mailed to the DEFENDANT on May 3, 2008.

6. On July 15, 2008, the DEBTOR filed an Adversary Complaint against the DEFENDANT alleging that the DEFENDANT wilfully violated the automatic stay and the discharge injunction, seeking compensatory damages, attorney fees and an award of punitive damages in the amount of $10,000.00.

7. Service of process was effected by U.S. Mail on July 15, 2008. DEFENDANT'S Answer was due August 14, 2008. DEFENDANT neither appeared nor filed a responsive pleading.

8. DEBTOR filed a Motion for Default Judgment on September 5, 2008, a preliminary hearing was held on October 6, 2008, and an evidentiary prove-up hearing held on November 3, 2008. Notice of both hearings was sent to the DEFENDANT, but the DEFENDANT did not appear at either hearing.

9. At the prove-up hearing, pursuant to the DEBTOR'S testimony and the admission of documentary evidence, the following time line was established:

- DEFENDANT sent a billing statement dated May 3, 2008, to DEBTOR stating a current balance due of $1,713.00, which DEBTOR forwarded to her attorney.

- DEBTOR'S attorney sent a cease and desist letter dated May 13, 2008, to DEFENDANT at "Department 4430, Carol Stream, IL 60122-0001."

- DEFENDANT sent a second billing statement dated May 31, 2008, to DEBTOR showing the account balance of $1,713.00 as "over 30 days," which DEBTOR faxed to her attorney.

- DEBTOR'S attorney sent a second cease and desist letter dated June 13, 2008, to DEFENDANT at the same Carol Stream address.

- DEFENDANT sent a third billing statement dated June 28, 2008, to DEBTOR showing the account balance of $1,713.00 as "over 60 days."

10. The DEBTOR testified that she received two or three collection calls that used a name with the word "urological" in it.

11. The DEBTOR is requesting attorney fees in the amount of $1,380.00.

## ANALYSIS

Initially, with respect to the DEBTOR'S testimony about the dunning calls, her testimony was too nonspecific to tie the calls to the DEFENDANT. The calls will be disregarded. DEFENDANT'S liability will be evaluated solely on the basis of the three billing statements. Because those statements were all sent after the DEBTOR received her discharge, at a time when the automatic stay was no longer in effect, 11 U.S.C. § 362(c)(2)(C), this action is properly viewed as one for a violation of the discharge injunction, not for violation of the automatic stay.

Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge. *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001). If the violation was deliberate, the debtor could recover a reasonable attorney fee. *Id.* at 916. If the discharged debtor could prove criminal contempt, punitive damages could be awarded, but perhaps not by the bankruptcy court since it is unsettled whether bankruptcy judges have criminal contempt powers. *Id.* Although compensation for an actual injury is within the remedial purpose of civil contempt, in light of *Aiello v. Providian Financial Corp.*, 239 F.3d 876 (7th Cir. 2001), holding that purely emotional injuries are not compensable in an action to redress a wilful stay violation, the Seventh Circuit would likely follow the same rule with respect to actions for redress under Section 524(a)(2).

3

The facts of this case call into question an issue that this Court previously addressed in a written opinion issued in *Dailey v. Chase Bank USA, N.A.* (*In re Dailey*), 2007 WL 4531804 (Bankr.C.D.Ill 2207), in which the Court expressed its view that a debtor's attorney is expected to make reasonable efforts to contact an offending creditor before bringing suit for an illegal act of collection. The rationale behind this expectation is, of course, that most violations of the automatic stay or the discharge injunction are not deliberate, so that once a creditor is directly made aware of the stay or the injunction, the offending activity will cease. In order to be effective, the warning or notice from the attorney must be properly directed so as to ensure a high likelihood of its receipt by someone in the creditor's organization who is in a position of authority or at least in a chain of command with such a person.

The DEBTOR'S attorney sent two warning letters to the DEFENDANT. Ordinarily, that should be sufficient. These warnings were flawed, however, because they were sent to the wrong address. A quick glance at the billing statements readily leads to the conclusion that the Carol Stream address is the address designated by the DEFENDANT for the mailing of payments. It's general office address, also shown on the statements, is on Knoxville Avenue in Peoria, and is the same address designated for its Registered Agent, Stuart Bowers, in the Secretary of State's corporate records. As is widely known by bankruptcy professionals, payment addresses are often not controlled by the creditor, whose payments may be processed by a receivables processing company, or a factoring agent or a bank. The fact that Carol Stream, a Chicago suburb, is a long way from the

4

DEFENDANT'S main office in Peoria, bolsters that possibility. When a general office address is readily available, as it was here, the warning notice must be sent there, not to an address for payments.

Under these circumstances, the Court is not willing to conclude that the DEFENDANT received the warning letters. Since the billing statements stopped when service of the complaint was made, at the correct Knoxville Avenue address, it is more likely than not that the DEFENDANT did not receive the warning notices.

This is not to say that the DEFENDANT'S violation of the discharge injunction is entirely excusable. It may be safely presumed that the DEFENDANT received the initial notice of the DEBTOR'S bankruptcy filing and the subsequent order of discharge. The DEFENDANT is a medical service provider that has been in business for many years. It likely has had hundreds of patients who owe for services file for bankruptcy relief. As a regular bankruptcy creditor, the DEFENDANT is required to have procedures in place to make sure that patient bankruptcies are recorded in its billing system immediately upon receipt of notice so that the automatic stay is honored. The DEFENDANT is also expected to have an elemental understanding of the effect of a discharge in bankruptcy and, once again, to incorporate in its information systems a trigger that recognizes that discharged debts must be written off as permanently uncollectible.

The Court does not recall a similar suit against this DEFENDANT, and thus assumes that such systems are properly in place. For some reason, the DEBTOR'S case fell through a crack in that system, probably because of human error. Once served with the complaint, the collection activity ceased. So this DEFENDANT has no history of flouting the

5

automatic stay or the discharge injunction, which greatly diminishes the need to punish it or send it a strong message in the form of a monetary penalty.

Since the DEBTOR suffered no financial loss as a result of the DEFENDANT'S conduct, compensatory damages for purely emotional suffering are not available. This Court does not view this case as one where punitive damages are appropriate. An award of attorney fees is appropriate, but in a reduced amount due to the use of the wrong address for the warnings sent by the DEBTOR'S attorney. Consistent with this Court's opinion in *Dailey,* fees of $400.00 will be awarded and a default judgment will be entered for that amount.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###